**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

GREGORY LEE CARTER,           :

     Petitioner,              :

vs.                       :       CA 22-0110-KD-MU

REOSHA BUTLER,              :

     Respondent.

## REPORT AND RECOMMENDATION

Gregory Lee Carter, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). Carter challenges the validity of his second-degree burglary, third-degree burglary, and first-degree attempted theft of property convictions in the Circuit Court of Mobile County, Alabama, and his 20-year concurrent sentences. (*See id.*, PageID.2). This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d). Alternatively, it is recommended that the Court find that it is procedurally barred from reaching the merits of the claims Carter raises.

## FACTUAL BACKGROUND

On March 9, 2007, Carter was indicted on charges of third-degree burglary, second-degree burglary, and first-degree attempted theft of property. (*Compare* Doc. 7-2, PageID.59 *with* Doc. 7-5, PageID.63). A notice of intent to plead guilty, executed by Carter, his attorney, and the District Attorney, was filed on June 9, 2008. (Doc. 7-5, PageID.63 ("Comes now the defendant and respectfully shows unto the court that the State has offered to recommend a sentence of <u>20 years to serve in penitentiary concurrent each case. The defendant shall pay restitution to be determined, $50.00 VCA[,] and court costs in each case</u>, if defendant enters a plea of guilty to the charge of <u>Burglary 3rd Degree, Burglary 2nd Degree, Att. Theft of Property 1st Degree</u> and based on that recommendation the defendant intends to plead guilty, as stated above[.]")). Carter entered counseled guilty pleas to these three charges on June 19, 2008, was adjudged guilty of those offenses, and was sentenced to concurrent 20-year terms of imprisonment. (*See* Doc. 7-6, PageID.69). Carter did not directly appeal his convictions and sentences (Doc. 1, PageID.3), nor did he file a Rule 32 petition (or any other post-conviction petition) in the state courts of Alabama during the one-year limitations period (*see id.*).[1]

---

[1]    More than thirteen (13) years later, on February 14, 2022, Mobile County Circuit Judge Jay A. York entered an Order construing Carter's "Petition to Discharge Petitioner From Custody" as an attempt "to file a timely Rule 32 petition[]" and, therefore, ordered Carter to "resubmit his petition in compliance with Rule 32.6(a) & (b) of the Alabama Rules of Criminal Procedure. (Doc. 7-7, PageID.71). In that Order, Judge York also informed Carter that "the Court has <u>no jurisdiction</u> to rule upon a Rule 32 petition unless a filing fee has been paid *or* the Court has granted a properly submitted request to be treated 'In Forma Pauperis.'" (*Id.*) (emphasis in original).  However, the petition filed by Carter and construed by the trial court as a Rule 32 petition was not filed within Petitioner's one-year limitations period. Moreover, Carter has supplied this Court with no documentation establishing that he responded in any manner to Judge York's order and an independent review of the state-court records convinces the Court
(Continued)

On March 7, 2022 (*see* Doc. 1, PageID.12), Carter filed this federal collateral attack on his burglary and attempted first-degree theft of property convictions and sentences pursuant to 28 U.S.C. § 2254 (*see id.,* PageID.1-12). Carter claims that his arrest and subsequent detention were the result of an illegal arrest, that the warrant was invalidly issued because it was unaccompanied by a separate affidavit, that he was not read his *Miranda* rights, and that his first probable cause hearing was violative of federal laws (*see* Doc. 1, PageID.6-9). In his petition, Carter contends that the one-year limitations period set forth in 28 U.S.C. § 2244(d) has no application because he "is not challenging his conviction[s and] sentence[s] on state laws," but, instead, "is challenging that the laws of the land has been disregarded during his arrest and detention that did in fact run his custody afoul[.]" (Doc. 1, PageID.11).

Because the Answer of the Respondent contained both a statute of limitations defense and a procedural default defense (*see* Doc. 7, PageID.36-43), the undersigned entered a show cause order on May 25, 2022, instructing Petitioner to respond to each of those defenses by not later than June 27, 2022. (*See* Doc. 8, PageID.73&78). Carter timely filed his response. (*See* Doc. 9). His response is both lengthy and confusing because he conflates the statute of limitations and the procedural default doctrine (*see id.,* PageID.82), spends an inordinate amount of ink on the "merits" of his claims (*see id.,* PageID.83-86), and as an expositional aside identifies the supreme law of the land (*see id.,* PageID.86-87). The only "kernels" of possible gold the undersigned can discern from Carter's pleading is his argument, albeit entirely conclusory, that the

---

that Carter filed no response to Judge York's order. Accordingly, any "petition" filed by Carter in state court has effectively been dismissed.

State of Alabama withheld all documents generated during his arrest and detention and, therefore, "[t]he factual predicate of the claim could not have been discovered previously through the exercise of due diligence." (*Id.,* PageID.80; *see also id.,* PageID.79). This argument, of course, is not a 28 U.S.C. § 2244(d)(1)(A) argument at all but, instead, it is a § 2244(d)(1)(D) argument. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). As for the procedural default defense raised by the respondent, Carter takes a stab at answering the Court's questions (*see* Doc. 9, PageID.87-88), arguing no default occurred because his detention and "custody [wa]s the result of the fruits of an illegal arrest[,]" which led to an invalid indictment and an illegal conviction (*id.,* PageID.87-88); and that even if a procedural default occurred, it is the fault of the Detective who arrested him without a valid complaint affidavit being presented to the magistrate to establish probable cause for an arrest (*id.,* PageID.88; *see also id.* (Carter also argues that if a procedural default has occurred, his "fourth amendment [rights] w[ere] violated in which resulted in the petitioner being illegally detained, arrested and run his custody afoul.")). Carter also contends he is actually innocent of the crimes for which he was convicted. (*See id.,* PageID.88-89 (offering no facts establishing his "actual, factual innocence;" instead, he contends that if the complaint affidavit had not been withheld from the defense, he could have proven his actual innocence essentially through the lack of probable cause)).[2]

---

[2]    Because Carter has raised the specter of actual innocence in response to the procedural default defense, the undersigned reads his pleading broadly to assert a factual innocence claim in opposition to the Respondent's statute of limitations defense as well.

**CONCLUSIONS OF LAW**

**A.    Statute of Limitations.**    The Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added

a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations

within which state prisoners must file their habeas corpus petitions pursuant to 28

U.S.C. § 2254. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir.

1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Carter appears to now contend that his habeas corpus petition is timely because

he comes within subsection (D), "the date on which the factual predicate of the . . .

claims presented could have been discovered through the exercise of due diligence."
(*See* Doc. 9, PageID. 80 ("The factual predicate of the claim could not have been
discovered previously through the exercise of due diligence.")). If Carter does not meet
this section, his petition is time-barred because he makes absolutely no showing (nor
offered any argument) that subsections (B) or (C) of § 2244(d)(1) apply to his case
(*compare* Doc. 1 *with* Doc. 9) and his one-year limitation period expired long ago under
subsection (A), "the date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review."

"For prisoners whose convictions became final prior to the effective date of the
AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its
effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir.
1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683
(2000). This rule from *Guenther* obviously is inapplicable since Carter's guilty-plea
convictions[3] became final on July 31, 2008, upon expiration of the forty-two (42) days
for filing an appeal in accordance with Ala.R.App.P. 4(b)(1).[4] Ala.R.App.P. 4(b)(1) ("In a
criminal case a notice of appeal by the defendant shall be filed with the clerk of the trial
court within 42 days (6 weeks) after pronouncement of the sentence, provided that the
notice of appeal may be oral, as provided in Rule 3(a)(2)."); *see also McCloud v. Hooks,*
560 F.3d 1223, 1228 (11th Cir. 2009) ("Alabama also provides that a judgment
becomes final either at the conclusion of direct review or forty-two days after the

---

[3]     On June 19, 2008, Carter entered counseled guilty pleas to the charges and was
sentenced to concurrent 20-year terms of imprisonment.

[4]     Carter forthrightly admits in his habeas corpus petition that he did not directly
appeal his convictions and sentences. (Doc. 1, PageID. 3).

sentence is entered, which is the time in which an appeal may be taken."); *cf. Adams v. United States*, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999) ("[W]here a defendant does not pursue a direct appeal, the conviction becomes final when the time expires for filing a direct appeal."). Therefore, Carter's one-year period of limitations under AEDPA began to run on July 31, 2008 and expired on July 31, 2009, more than 12 years before he filed the instant § 2254 application.

Petitioner is unable to take advantage of the tolling provision built into § 2244(d), 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"), because—by his own admission (*see* Doc. 1, PageID.3-5)—he did not file any state collateral attacks on his convictions and concurrent sentences during the relevant limitations period, *see Pace v. DiGuglielmo,* 544 U.S. 408, 413, 125 S.Ct. 1807, 1811-1812, 161 L.Ed.2d 669 (2005) ("As in *Artuz*, we are guided by the 'common usage' and 'commo[n] underst[anding]' of the phrase 'properly filed.' In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto*

extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay."); *McCloud, supra,* 560 F.3d at 1227 ("While a Rule 32 petition is a tolling motion under § 2244(d)(2), it cannot toll the one-year limitations period if that period has expired prior to filing the Rule 32 petition."); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000). Accordingly, Carter's petition is time-barred unless he can meet the requirements of 28 U.S.C. § 2244(d)(1)(D) based upon the date on which the factual predicate of his claims could have been discovered through the exercise of due diligence.

"'Section 2244(d)(1(D) runs the [statute-of-limitations] clock from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence."'" *Cole v. Warden, Georgia State Prison,* 768 F.3d 1150, 1155 (11th Cir. 2014) (quoting *McQuiggin v. Perkins,* 569 U.S. 383, 133 S.Ct. 1924, 1932, 185 L.Ed.2d (2013), in turn quoting 28 U.S.C. § 2244(d)(1)(D)), *cert. denied,* 575 U.S. 989, 135 S.Ct. 1905, 191 L.Ed.2d. 773 (2015).

> The analysis of "factual predicate" and "due diligence" in § 2244(d)(1)(D) is symbiotic. The factual predicate first must be determined to give meaning to due diligence in discovering the claim for a particular petitioner's case.
>
> "[I]t should go without saying that a factual predicate must consist of *facts*. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." *Rivas v. Fischer,* 687 F.3d 514, 535 (2d Cir. 2012). The "factual predicate" also has been referenced as the underlying "vital facts" of a petitioner's claim.

.     .     .

> "'Due diligence . . . is an inexact measure of how much delay is too much.'" . . . [T]he due diligence required of a state prisoner in filing a § 2254 habeas petition must be determined on a case-by-case basis relative to the factual predicate.

*Id.* at 1155 & 1156 (emphasis in original); *see also id.* at 1157 ("'Time begins when the prisoner knows (or through diligence could discover) the important facts, *not when the prisoner recognizes their legal significance.*'") (emphasis in original).

The initial roadblock to Carter relying on § 2244(d)(1)(D) is his failure to identify the underlying "vital facts" of his claims and when he discovered those "facts." Instead, in his original habeas petition (Doc. 1), Carter speaks in generalities throughout his complaint, stating that the records in his case would show that the "warrant complaint and affidavit" were violative of federal law (*id.,* PageID.6), that the arrest warrant was unaccompanied by a separate affidavit (*id.,* PageID.7), and that his first probable cause hearing was violative of federal laws were (*id.*, PageID.8), and in his response to the Court's show cause order (Doc. 9), Carter complains about the Respondent's failure to produce the criminal complaint and affidavit in his case (*see id.,* PageID.79&80) but also maintains that the records would show that the State of Alabama withheld all documents related to his arrest and detention (*id,* PageID.80) and otherwise generally argues he "was never informed legally of the nature and cause of the accusations against him in violation of [his] 5th and 6th amendment right[s,]" he never received a true bill [of] indictment[,] and the grand jury was without power to invade all the clearly constitutional violations under the 4th amendment here in the record[.]" (*Id.*). All of Carter's "statements" are, of course, nothing more than conclusions drawn from preexisting facts

and, therefore, do not qualify as factual predicates for any of his claims. Inasmuch as Carter has not established the factual predicate (that is, vital facts) underlying his rather amorphous and conclusory claims (*see* Doc. 1, PageID.6-8),[5] this Court's § 2244(d)(1)(D) comes to a screeching and immediate halt.[6] However, the undersigned would also observe that Carter nowhere alleges (*compare* Doc. 1 *with* Doc. 9), and the state records certainly do not reveal, that he engaged in any investigation into his case in the twelve (12) years since his one-year limitations period expired. This is not due diligence. Therefore, in absence of both prongs, Carter cannot take advantage of § 2244(d)(1)(D).

In addition, this Court should conclude that Carter is not entitled to equitable tolling of the one-year limitations period. In *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court specifically held, for the first time,

---

[5]     Based on the content of the complaint (Doc. 1), it is clear to the undersigned that the claims which Carter now raises could have been raised at any time during the entirety of his incarceration, as, again, they are generalities devoid of any specific facts (and certainly no facts that Petitioner claims to have recently discovered).

[6]     And here is the other problem with Carter's claims and his attempt to rely on § 2244(d)(1)(D). Central to Carter's Fourth Amendment claims are the alleged warrant/complaint (for his arrest) and the affidavit in support of the warrant for arrest (*see* Doc. 1, PageID.6&7), and in his response to this Court's show cause order he complains about the Respondent's failure to include these documents as part of the record filed with this Court (*see* Doc. 9, PageID.79&80-81). But here's the thing. Those documents were not provided by the Respondent because they do not exist. And they do not exist because the arrest effectuated in this case was a warrantless arrest after Carter as he attempted to ford a creek; he was taken into custody by the police eventually the police on a car chase until reaching a dead end, prompting Petitioner to leave his car (which was found to contain a crowbar and the stolen property, namely, cartons of cigarettes) and lead police on a chase (by foot) though a wooded area until the police eventually caught up to Carter as he attempted to ford a creek; he was taken into custody by the police after they fished him out of the water. (*See* Doc. 7-1, PageID.48-53). Accordingly, what started out for Carter as conclusory claims (Doc. 1), end with the undersigned's determination that they are specious because they are based on a phantom/illusory arrest warrant/complaint and affidavit (that do not exist).

that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at 645, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dep't of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient.").

Carter makes no argument that he is entitled to equitable tolling of the one-year limitations period (*compare* Doc. 1 *with* Doc. 9), and because "there is nothing in the record to support its application[,]" *Stevens v. United States*, 2013 WL 3458152, *2 n.2 (N.D. Miss. Jul. 9, 2013), the undersigned concentrates on a consideration of Petitioner's "actual innocence" argument (*see* Doc. 9, PageID. 88-89). In other words, because Carter nowhere attempts to establish that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period, *compare Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'") *with Pugh, supra,* 465 F.3d at 1300-01 ("Pugh bore the burden of establishing that equitable tolling was warranted."), the undersigned need only consider his "actual innocence" argument because it is clear that nothing other than Petitioner's own lack of due diligence is responsible for the untimeliness of the filing of the instant petition.

A federal court can consider the merits of an untimely § 2254 motion if the petitioner establishes that he is factually innocent of the crimes for which he stands convicted. *See San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied sub nom. San Martin v. Tucker,* 565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011). Here, however, Carter has not shown that he is entitled to have the untimeliness of his § 2254 petition excused based on actual innocence. In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), the Supreme Court specifically held that

"actual [factual] innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id.* at 386, 133 S.Ct. at 1928. However, the Supreme Court also notably cautioned that "tenable actual-innocence gateway pleas are *rare*[.]" *Id*. (emphasis supplied). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*., quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). Carter's actual innocence argument (*see* Doc. 9, PageID.88-89) fails because he has offered no new evidence establishing his actual (factual) innocence of the burglary and first-degree attempted theft of property offenses to which he entered counseled guilty pleas on June 19, 2008.[7] Thus, Petitioner cannot take advantage of the actual innocence gateway recognized in *McQuiggin.* Accordingly, Carter's § 2245 petition should be dismissed as time-barred in accordance with 28 U.S.C. § 2244(d).[8]

### B.     Exhaustion of State Remedies and the Procedural Default Doctrine.

A threshold issue in a federal habeas corpus case brought by a state prisoner is

---

[7]     Petitioner's attack on the purported "lack of probable cause" for his arrest constitutes an inappropriate "legal" innocence argument.

[8]     As an aside, the undersigned would note that in the complaint Carter argues that the statute of limitations is inapplicable because he is challenging his convictions and sentences for the first time under federal law, which "has no statute of limitations." (Doc. 1, PageID.11). This position is spurious and unavailing because the habeas corpus statute has always provided that the federal courts can entertain an application in behalf of a person (like Carter) "in custody pursuant to the judgment of a State court **only** on the ground that he is in custody in violation of the **Constitution or laws or treaties of the United States**[,]" 28 U.S.C. § 2254(a) (emphasis supplied), and, as well, provides that such application must be timely filed, *see* 28 U.S.C. § 2244(d).

whether the petitioner has properly raised the federal constitutional claims in the state

courts, thereby exhausting all available state court remedies. 28 U.S.C. § 2254(b). The

origins of the exhaustion requirement are found in principles of comity, "which protect

the state court[]s['] role in the enforcement of federal law and prevent disruption of

state court proceedings." *Jackson v. Estes,* 2015 WL 5117717, *8 (N.D. Ala. Aug. 28,

2015), citing *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379

(1982).[9]

> In order to exhaust his state remedies, a state prisoner who seeks federal
> habeas corpus relief must present the same claim to the state court that
> he presents to the federal court. *Picard v. Connor,* 404 U.S. 270, 275-76,
> 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Thus, in order to exhaust state
> remedies, a petitioner must fairly present every issue raised in his federal
> petition to the state's highest court,[10] either on direct appeal or on

---

[9]        The Supreme Court has long held

that a state prisoner's federal habeas petition should be dismissed if the
prisoner has not exhausted available state remedies as to any of his federal
claims. (citations omitted) This exhaustion requirement is also grounded in
principles of comity; in a federal system, the States should have the opportunity
to address and correct alleged violations of state prisoners' federal rights.

.        .        .

[A] habeas petitioner who has failed to meet the State's procedural requirements
for presenting his federal claims has deprived the state courts of an opportunity
to address those claims in the first instance. A habeas petitioner who has
defaulted his federal claims in state court meets the technical requirement for
exhaustion; there are no state remedies any longer "available" to him.  (citations
omitted) In the absence of the independent and adequate state ground doctrine
in federal habeas, habeas petitioners would be able to avoid the exhaustion
requirement by defaulting their federal claims in state court. The independent
and adequate state ground doctrine ensures that the States' interest in
correcting their own mistakes is respected in all federal habeas cases.

*Coleman v. Thompson,* 501 U.S. 722, 731 & 732, 111 S.Ct. 2546, 2554-2555 & 2555, 115
L.Ed.2d 640 (1991).

[10]        And, of course, therefore, "[c]laims which have never been presented to a state
court . . . are procedurally defaulted if presentation of the claims in state court would be barred
(Continued)

14

collateral review.[11] *See Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (quotation marks and citation omitted). In addition, the state court petition must make the state courts aware that the claims asserted do, in fact, raise federal constitutional claims. *See Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). More precisely, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* 845, 119 S.Ct. at 1732; *see also Kelley v. Secretary for Dep't of Corrs.,* 377 F.3d 1317, 1344 (11th Cir. 2004) ("The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'"). If a petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.

*Id.* (footnotes added and footnote omitted). In other words, when a petitioner has

procedurally defaulted a claim by failing to exhaust state court remedies that are no

longer available, *see O'Sullivan, supra,* 526 U.S. at 848-49, 119 S.Ct. at 1734, a

federal court is barred from reaching the merits of that claim unless the petitioner "can

---

by state procedural rules." *Sanchez v. Hetzel,* 2014 WL 1491178, *2 (M.D. Ala. Apr. 15, 2014) (citations omitted).

[11]     Indeed, "[t]o challenge a conviction issued by an Alabama state court, a petitioner must assert the [federal] claim on direct appeal or in a Rule 32 proceeding, appeal any adverse ruling, seek rehearing in the Alabama Court of Criminal Appeals, and file a petition for writ of certiorari in the Alabama Supreme Court." *Shapley v. Thomas,* 2014 WL 4470700, *4 (N.D. Ala. Sept. 4, 2014) (citations omitted); *see Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]n order to exhaust state remedies as to a federal constitutional issue a petitioner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state, [*O'Sullivan v. Boerckel,* 526 U.S.] at 845-47, 119 S.Ct. at 1732-34."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002).

demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claim[] will result in a

fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at

2565. The cause and prejudice standard applies "uniformly to all independent and

adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the
> petitioner to show that some objective factor external to the defense
> impeded counsel's efforts to raise the claim in state court. Objective
> factors that constitute cause include interference by officials that makes
> compliance with the state's procedural rule impracticable, and a showing
> that the factual or legal basis for a claim was not reasonably available to
> counsel. In addition, constitutionally [i]neffective assistance of counsel is
> cause. Attorney error short of ineffective assistance of counsel, however,
> does not constitute cause and will not excuse a procedural default. Once
> the petitioner has established cause, he must show actual prejudice
> resulting from the errors of which he complains.

> Federal courts retain the authority to issue the writ of habeas
> corpus in a further, narrow class of cases despite a petitioner's failure to
> show cause for a procedural default. These are extraordinary instances
> when a constitutional violation probably has caused the conviction of one
> innocent of the crime. We have described this class of cases as
> implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517

(1991) (internal quotation marks and citations omitted).

In her answer, the respondent asserts that all of petitioner's claims are

procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144

L.Ed.2d 1 (1999) due to Carter's failure to "fairly present" these claims throughout "one

complete round of the State's established appellate review process[,]" *id.* at 845, 119

S.Ct. at 1732 (*see* Doc. 7). *Compare McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305

(11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if

those claims were not first exhausted in state court. . . . In order to be exhausted, a

federal claim must be fairly presented to the state courts. . . . [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the **same** claim he urges upon the federal courts.' . . . It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. . . . In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999)."), *cert. denied sub nom, McNair v. Allen,* 547 U.S. 1073, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006), *with Kelley v. Secretary for the Dep't of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004) ("[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. . . . Dismissing a mixed petition is of little utility [] when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred. In such a case, requiring the petitioner to return to state court only to make a futile application for relief simply delays the federal courts' adjudication of his petition."), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005). And, here, Petitioner has couched his claims raised in his § 2254 federal petition as "federal" constitutional claims yet he has failed to raise every one of those claims (indeed, he

has not raised any of those claims) to any of Alabama's courts and certainly not

Alabama's Supreme Court. (*Compare* Doc. 1 *with* Doc. 7). Therefore, these claims are

procedurally defaulted because state procedural rules would bar him from raising these

claims in the state courts of Alabama. *Compare McNair, supra,* 416 F.3d at 1302 &

1305 *with Bailey v. Nagle,* 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may

treat unexhausted claims as procedurally defaulted, even absent a state court

determination to that effect, if it is clear from state law that any future attempts at

exhaustion would be futile."). Accordingly, this Court is barred from reaching the merits

of any claims raised by Carter absent Petitioner demonstrating "cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice."

*Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.

Petitioner lays the blame for any default of his claims at the feet of Det. Chad

Pezent, who he claims illegally arrested him without a valid complaint affidavit being

presented to a Mobile County magistrate and he claims to have suffered prejudice

because his "fourth amendment [rights] w[ere] violated in which resulted in the

petitioner being illegally detained, arrested and run his custody afoul." (Doc. 9,

PageID.88). Carter's "cause" argument is specious because, as reflected above, the

warrantless arrest of Carter was proper in light of the contents of Carter's car (the

stolen property and a crowbar) and the circumstances leading to his arrest (a car

chase that turned into a chase on foot, after the cars reached a dead end, and ended

when police caught up to Carter as he was trying to ford a creek). Moreover, even if

this convoluted cause argument could pass muster (and it was found that an arrest

warrant/complaint and affidavit existed), Carter certainly cannot establish prejudice because he entered counseled guilty pleas to all criminal charges and, therefore, waived all challenges to his arrest (that is, to any arrest warrant/complaint and affidavit in support thereof) and the detention incident thereto. *McDonald v. Kilgore,* 2020 WL 5753613, *3 (N.D. Ala. July 23, 2020) (recognizing the well-worn legal principle that a defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the convictions and concluding that the petitioner waived his challenge to the validity of his arrest because "[i]n Alabama, challenges to an arrest warrant or the affidavit submitted in support of the warrant are not jurisdictional."), *report and recommendation adopted,* 2020 WL 5750015 (N.D. Ala. Sept. 25, 2020); *see Sumlin v. State,* 710 So.2d 941, 942 (Ala.Crim.App. 1998) (challenges to the validity of an arrest warrant are non-jurisdictional challenges).

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because Petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Carter to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have

convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). As previously discussed in regard to the actual innocence gateway in *McQuiggin, supra,* Carter has not come forward with any new reliable evidence that establishes his actual factual innocence of third-degree burglary, second-degree burglary, or attempted first-degree theft of property, for which he was convicted (by plea of guilty) on June 19, 2008. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

**C.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v.*

*McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as equitable tolling is an extraordinary remedy which the Eleventh Circuit has rarely granted, *see Diaz, supra*, 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and petitioner has defaulted the claims he wishes this Court to address pursuant to *O'Sullivan v. Boerckel, supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Carter should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and*

*recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that Gregory Lee Carter's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under 28 U.S.C. § 2244(d). Alternatively, Petitioner is not entitled to any relief in this Court because he has procedurally defaulted his claims pursuant to *O'Sullivan v. Boerckel*. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal

for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 21st day of October, 2022.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**